**UNIVERSITY OF CINCINNATI MEDICAL CENTER, Appellant,**

**v.**

**UNITED STATES DEPARTMENT OF COMMERCE, DOMESTIC AND INTERNATIONAL BUSINESS ADMINISTRATION, OFFICE OF IMPORT PROGRAMS, Appellee.**

**Appeal No. 75–25.**

United States Court of Customs and Patent Appeals.

July 15, 1976.

---

William G. Konold, Cincinnati, Ohio, attorney of record, for appellant.

Rex E. Lee, Asst. Atty. Gen., William Kanter, Judith Hale Norris, Attys., Appellate Section, Civ. Div., Washington, D. C., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

LANE, Judge.

This is an appeal by the University of Cincinnati Medical Center from a decision of the Secretary of Commerce denying its application for duty-free entry of a surgical laser pursuant to item 851.60, Tariff Schedules of the United States (TSUS),[1] added by section 6 of the Educational, Scientific, and Cultural Materials Importation Act of 1966.[2] We affirm.

Appellant filed its first application for duty-free entry of a Medilase 791 surgical laser manufactured in Israel by Laser Industries Ltd. on October 10, 1973. The application alleged that the imported laser was to be used in investigative laser surgery, to study safety programs, and to teach the use of the laser to students and residents. The application also asserted that a similar domestically manufactured unit, an American Optical high-output $CO_2$ laser, was not scientifically equivalent to the imported laser because the imported unit had a "higher out-put," was "flexible, reliable, sterizable [sic]," and had a "small probe." The application also stated that no domestic laser was "flexible enough and precise enough to produce results desired in investigative laser surgery."

A notice of appellant's application was published in the Federal Register[3] as re-

---

1. Item 851.60 reads:

   Articles entered for the use of any nonprofit institution, whether public or private, established for educational or scientific purposes:

   851.60   Instruments and apparatus, if no instrument or apparatus of equivalent scientific value for the purposes for which the instrument or apparatus is intended to be used is being man-ufactured in the United States (see headnote 6 to this part [note 2, infra]) . . . . . . . . . . . . .Free

2. Pub.L. No. 89–651, § 6(c), 80 Stat. 897, 899, 19 U.S.C. § 1202, Schedule 8, Part 4, Headnote 6.

3. 38 Fed.Reg. 32273, Nov. 23, 1973.

quired by statute.[4] In response to this notice American Optical Corp. submitted a letter dated December 21, 1973, to the Department of Commerce describing its surgical laser. Accompanying the letter was a brochure detailing the specifications of the American Optical surgical laser and copies of several journal articles authored by surgeons who had used the American Optical laser. Also attached was a bibliography listing numerous other articles describing the use of the American Optical laser in surgery. The letter indicated, contrary to assertions in appellant's application, that the American Optical laser had a higher output than the imported laser (100 watts vs. 50 watts), and that the American Optical unit was sterilizable to the same extent as the imported laser. The letter also stated that reliability of the Medilase 791 visà-vis the American Optical unit could only be judged over extended periods of use. The letter did concede that the handpiece of the imported laser utilized a smaller probe than the American Optical unit.

Appellant's application was forwarded to the National Institutes of Health's Florence Agreement Committee [5] for a recommendation on appellant's application. The Florence Agreement Committee recommended a denial of appellant's application, stating:

> In view of the paper by Kaplan and Ger, entitled "The Carbon Dioxide Laser in Clinical Surgery," Israel Journal of Medical Science, Vol. 9, No. 1, pp. 79–83, January 1973, the justification * * * [of scientific nonequivalency] is inadequate. The application fails to show wherein this late model laser for surgery made by American Optical Corp. is not the scientific equal of the [imported] article.

Based on this recommendation, appellant's application was denied by the Secretary of Commerce, without prejudice to resubmission, on March 24, 1974.

Thereafter, on June 10, 1974, appellant resubmitted its application. The resubmitted application was identical to the original with respect to the allegations of the intended use of the imported laser and the allegations of deficiencies of the American Optical laser quoted above. However, accompanying the resubmitted application was a statement by Dr. Goldman, the director of appellant's laser laboratory, concerning the imported laser. Relevant portions of Dr. Goldman's statement are as follows:

> The delivery system developed by Laser Industries Ltd., Amada St., Israel, is unique and not available in this country or anywhere else in the world. Prior to this laser we used an experimental laser surgical model from American Optical, Co. This was unsatisfactory and inadequate for our cancer patients and we had to give this up. So at present, the imported laser system with its American components is the only one which can be used now in our laser cancer and burn program, and for other research at the Medical Center at the University of Cincinnati.
>
> This laser is used for research purposes in the Surgery Unit Operating Room area, our own staff fixes and modifies this laser so that it can be used on patients. This often requires considerable work since this is a research tool and is not an assembly live [sic] instrument and in itself is not ready for surgery. So, again, this is a research and experimental tool.
>
> * * * This laser is used both for research then, in laser safety, and in laser surgery * * *.
>
> This is the only laser, or as a matter of fact, the only effective instrument which can be used to treat burns without significant blood loss at the fames [sic] Shriner's Burn Institute of the Medical Center of the University of Cincinnati. Burn experts all over the country are watching these studies and viewing the special exhibits of this important work.
>
> For certain forms of cancer in women, the laser can do the surgery required

---

4. Headnote 6, supra note 2.

5. Pursuant to Headnote 6(c), supra note 2.

without significant blood loss. This is work done by the Department of Surgery, Dr. James Fidler and the Department of Obstetrics and Gynecology, Dr. Helmut Schellhaus. Also, in a similar manner with this horrible venereal disease epidemic of almost inoperable extensive venereal warts, this laser is the only surgical instrument found, as yet, which can be used without much bleeding and with only minimal recurrences.

For cancer deep in the throat and for papillomas in children, bloodless surgery can be done with this laser more effectively than with other instruments at the present time.

$$* \quad * \quad * \quad * \quad * \quad *$$

In brief, this is a unique, important research tool, as yet, not available in the U. S. A. This is flexible, effective, safe design and development.

A notice of appellant's resubmitted application was published in the Federal Register.[6]

Comments in response to appellant's application were again submitted by American Optical Corp. in a letter dated August 7, 1974.[7] This second letter by American Optical Corp. was again accompanied by scientific articles. Particularly relevant portions of the letter stated that the American Optical Model 200 Research Laser was capable of delivering up to 80 watts to the operating site, double the power of the Medilase 791. The letter also disputed Dr. Goldman's assertion that the Medilase 791 "is the only laser . . . which can be used to treat burns without significant blood loss * * *," citing two articles in support.[8] American Optical Corp. further disputed Dr. Goldman's assertion "[f]or cancer deep in the throat * * * bloodless surgery can be done with this laser more effectively than with other instruments at the present time," stating:

> The comment of Dr. Goldman relative to "cancer deep in the throat" (sic) is disturbing since it is either willfully misleading or reveals a loss of touch with the clinical state of the art of $CO_2$ laser surgery. Indeed the American Optical surgical $CO_2$ laser with its coupling to a Zeiss operation microscope is the *only* existing clinical approach to laryngeal surgery with a laser. This system of American Optical is presently used *routinely* in laryngeal and bronchial surgery in four medical institutions in the United States. See the paper "Laser Surgery in the Aerodigestive Tract", M. S. Strong et al., The American Journal of Surgery, *126*, pp. 529–533, October 1973, * * *. [Emphasis in original.]

Thereafter, appellant's application was forwarded to the Florence Agreement Committee for its recommendation. The Committee again recommended denial of appellant's application, stating:

> The application does not clearly describe specific unique features of the article that are scientifically required for the planned research or teaching, that are not available with the domestic American Optical Company, Model 200, Research Laser for Surgery, that may deliver up to 80 watts to the operating site.

As a result of this recommendation appellant's second application was denied, without prejudice to resubmission, on October 24, 1974.

---

6. 39 Fed.Reg. 26438, July 19, 1974.

7. Because the letter was not timely filed under 15 C.F.R. 701.9(a), it was treated below as an offer to provide additional information under 15 C.F.R. 701.10(a), and, accordingly, evaluated only for its factual content. Citations in this opinion to regulations in 15 C.F.R. 701.1 et seq. refer to the location of the regulations during the proceedings below. On March 18, 1975, the regulations in 15 C.F.R. 701.1 et seq. were redesignated as 15 C.F.R. 301.1 et seq., 40 Fed. Reg. 12253.

8. Stellar, Meijer, Walia & Mamoun, *Carbon Dioxide Laser Debridement of Decubitus Ulcers: Followed by Immediate Rotation Flap or Skin Graft Closure*, 179 Annals of Surgery 230 (1974); Levine, Ger, Stellar & Levenson, *Use of a Carbon Dioxide Laser for Debridement of Third Degree Burns*, 179 Annals of Surgery 246 (1974). Both articles describe the use of an American Optical Corp. laser in the research discussed therein.

Appellant then submitted a letter to the Department of Commerce indicating that it intended to resubmit its application. However, appellant failed to resubmit its application, and the denial of appellant's application became final.[9]

Appellant has appealed from this final decision.

## OPINION

■ Our scope of review in this matter is limited to "questions of law only," [10] which has been construed to mean that review of factual matters "is limited to determining whether the administrative decision is supported by substantial evidence." *Leo Goodwin Inst. For Can. Res., Inc. v. United States*, 521 F.2d 801, 806, 63 CCPA ── (1975); *Varian Associates v. United States*, 56 CCPA 54, 57, C.A.D. 953 (1969).

Appellant argues that the decision below is incorrect because the evidence of record supports a finding that the American Optical unit was not the scientific equivalent of the Medilase 791. Appellant relies on statements in appellant's applications that the American Optical unit was not "flexible enough to produce the results desired in investigative surgery," and on Dr. Goldman's statements, particularly his assertion that he had used an American Optical laser but found it unsatisfactory and inadequate for his cancer patients. Appellant also asks us to consider statements made by the Albert Einstein College of Medicine and by the University of Virginia Medical School in their respective applications for duty-free entry of the Medilase 791 as corroborating the assertions of scientific nonequivalency made by appellant in its application.

The record shows that the American Optical laser has a higher output than the Medilase 791, that the American Optical laser is sterilizable, and that there is no evidence to support appellant's assertion that the Medilase 791 is more reliable than the American Optical laser. The record, particularly the reprints of journal articles provided in the American Optical letters of December 21, 1973 and August 7, 1974, also shows not only that the American Optical laser was widely used in clinical surgery but also that it was an instrument having both precision and flexibility. Two articles in particular discuss the precision and flexibility of the American Optical laser. The first, *Laser Surgery in the Larynx*,[11] in discussing the use of an American Optical laser in surgery, stated:

> It was found that the new type of energy could be controlled and applied to preselected areas of the vocal cords with microscopic precision; * * *.

The same article further stated:

> It was felt that the beam could be confidently controlled at all times with perfect precision so that there was no danger to the patient or the operating room personnel. * * *
>
> *     *     *     *     *     *
>
> * * * The precision with which laser surgery can be carried out suggests that it will be most useful in the management of small lesions within the larynx; where delicate surgery with preservation of function is important, laser surgery promises to be most beneficial.

A second article supplied by American Optical in its letter of December 21, 1973, entitled *Laser Surgery in the Aerodigestive Tract*,[12] discussed the method of delivery of the laser beam to the operating site, stating:

> The delivery arm has freedom of motion in all directions and is adequately counterbalanced so that the beam can be aimed conveniently. * * *
>
> The *micromanipulator laser attachment for the surgical microscope* allows delivery of the laser beam to inaccessible areas

9.  15 C.F.R. 701.8.

10. 28 U.S.C. § 1544.

11. Strong & Jako, 81 Annals of Otology, Rhinology and Laryngology, 791 (1972).

12. Strong, Jako, Polanyi & Wallace, 126 American Journal of Surgery 529 (1973).

provided the target area can be viewed directly through the microscope. When the microscope and laser attachment are fitted with a 400 mm focal length front lens, the beam can be directed to the pharynx and larynx with precise visual control. * * * The 400 mm focal length lens allows room for manipulation of instruments (such as suction tips and retractors) between the microscope and the target area.

An aiming light is provided in the microscope attachment so that invisible laser beams can be kept on the target area. The joy stick control on the attachment is coupled via a seven to one reduction lever to the laser beam aiming mirror, so that it provides micromanipulation of the laser beam across the target area. This manual control in addition to binocular magnification of the target allows laser incision and excision of tissue to be carried out with exquisite precision. The mechanical stability of the mechanism in conjunction with the inertialess nature of the laser beam eliminates the tremor commonly seen with the use of handheld, flexible, long-shafted instruments such as cup forceps. [Emphasis in original.]

The evidence of record further shows that it is the nature of the $CO_2$ laser to limit blood loss during surgery. *Laser Surgery in the Larynx* states:

Microsurgery is only practical so long as the field can be kept free of blood. Laser radiation has an extraordinary *hemostatic effect* when tissue is destroyed * * *.

This is further supported by *Laser Surgery in the Aerodigestive Tract*:

*Hemostasis* is virtually complete unless a vessel of 0.5 mm or greater is transected; if bleeding can be controlled momentarily by pressure, the beam can be used to coagulate slightly larger vessels.

Further similar discussions can be found in the two articles cited by American Optical Corp. in its second submission (see note 8, supra).

In view of the extensive prior use of the American Optical laser in surgery and the discussion in the above-cited articles of the capabilities, flexibility and precision of that laser, we find the decision of the Secretary of Commerce denying appellant's application to be supported by substantial evidence. Appellant was given the opportunity to further define the specific unique features of the imported laser required by it and not available from the American Optical laser in a resubmission. However, since appellant neglected to resubmit its application, the decision below became final and appellant is now bound by it.

We have reached our decision based solely on the record below. We have not considered the contention presented here for the first time by appellant that applications for duty-free entry of the Medilase 791 by others corroborate its assertions of nonequivalency. We review the correctness of the decision below on the record developed below and not on contentions or facts newly presented on appeal. *Varian Associates*, supra.

Appellant further argues that the Department of Commerce has applied its standards inconsistently because it has allowed duty-free entry of the Medilase 791 to two other institutions [13] while denying appellant's application. Such action, appellant alleges, is inconsistent with the Constitution, which requires a uniform application of duties. This argument is specious. Both of these other applications were approved for duty-free entry prior to the submission of evidence by American Optical Corp. to the Secretary of Commerce regarding the use and capabilities of its particular surgical laser. Thus, evidence was available for appellant's application which was not available earlier. Moreover, each application for duty-free entry under item 851.60 must indicate the purpose for which the imported laser is to be used and must relate the unique features of the imported laser to this purpose. It may well be that the imported laser is scientifically unique for the purposes of one institution and not scientifi-

13. Albert Einstein College of Medicine; University of Virginia Medical School.

cally unique for the purposes of others. Therefore, each application of necessity is evaluated on its own merits. We find no discriminatory treatment of appellant's application by the Secretary of Commerce.

Accordingly, the decision of the Secretary of Commerce is *affirmed.*

*AFFIRMED.*