701 F.2d 942
 4 ITRD 1577
 The UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, Appellant,
v.
UNITED STATES DEPARTMENT OF COMMERCE, DOMESTIC AND
INTERNATIONAL BUSINESS ADMINISTRATION, OFFICE OF
IMPORT PROGRAMS, Appellee.
 No. 82-26.
 United States Court of Appeals,
Federal Circuit.
 March 8, 1983.
 
 David E. Broome, Jr., Asst. Atty. Gen. of N.C., Raleigh, N.C., argued for appellant. With him on briefs was Rufus L. Edmisten, Atty. Gen. of N.C., Raleigh, N.C.
 Sheila N. Ziff, New York City, argued for appellee. With her on brief were Asst. Attys. Gen. J. Paul McGrath and David M. Cohen, Washington, D.C.
 Before MARKEY, Chief Judge, and DAVIS and NICHOLS, Circuit Judges.
 DAVIS, Circuit Judge.
 
 
 1
 The University of North Carolina at Chapel Hill (the University or UNC) appeals from the decision of the Secretary of Commerce (Secretary) denying its application for duty-free entry of a gas chromatograph/mass spectrometer/data system (GC/MS system) pursuant to section 6(c) of The Educational, Scientific, and Cultural Materials Importation Act of 1966[1] (Act). This statutes mandates duty free entry of instruments and apparatus "for the use of any nonprofit institution, whether public or private, established for educational or scientific purposes * * * if no instrument or apparatus of equivalent scientific value for the purposes for which the instrument or apparatus is intended to be used is being manufactured in the United States." Upon application by the institution, and after considering the views of interested persons, the Secretary of Commerce "shall determine whether an instrument or apparatus of equivalent scientific value to such article, for the purposes for which the instrument or apparatus is intended to be used, is being manufactured in the United States."
 
 
 2
 UNC is admittedly a nonprofit institution for educational and scientific purposes. In August 1978, it submitted an application for duty free entry of a GC/MS system manufactured by VG-Micromass (VG) of the United Kingdom. Both VG and the Nuclide Corporation (Nuclide), a United States manufacturer, had submitted bids after the University issued a formal request for bids (RFB) for supplying the instrument. This initial application was denied without prejudice on August 8, 1979, and UNC's resubmitted application was denied with prejudice on May 3, 1982. Both times the Secretary determined, with advice from the National Bureau of Standards, that UNC was not entitled to duty free entry of the VG system because the Nuclide equipment is of equivalent scientific value for UNC's intended purposes. That conclusion is challenged here. Meanwhile UNC has been using the instrument.
 
 
 3
 * The statute, regulations, and controlling judicial decisions establish several applicable legal propositions. The first is that the applicant institution, not the Secretary, determines both the scientific purpose for which the institution desires the particular instrument and also the institution's scientific needs with respect to that instrument. These postulates follow from the repeated legislative emphasis in the Act on "the purposes for which the instrument or apparatus is intended", plus the restriction of the Secretary's function to the determination of "whether an instrument or apparatus of equivalent scientific value to such article, for the purposes for which the instrument or apparatus is intended to be used, is being manufactured" in this country (emphasis added). See also the pertinent regulation, 15 C.F.R. Sec. 301.11(d). This must mean that the institution, not the Secretary, decides whether the functions performed by the article (for which duty free entry is sought) are needed for the institution's scientific purposes, and whether those purposes entailing the use of the article are scientifically worthwhile or likely to be fruitful.[2]
 
 
 4
 Another significant requirement was set forth in Yale University v. United States Department of Commerce, 579 F.2d 626 (Cust. & Pat.App.1977), where the court said that the standard for the Secretary's decision "requires that the Director[3] provide some scientific evidence as a basis for his decision. A conclusory statement, merely opinion * * * will not suffice. Without scientific evidence, an applicant does not have a meaningful opportunity for rebuttal." Yale University, 579 F.2d at 632-33 (footnote omitted).
 
 
 5
 A third governing standard is that our review of "questions of law" covers the determination whether the administrative decision is supported by substantial evidence. University of Cincinnati Medical Center v. United States Department of Commerce, 537 F.2d 518, 522 (Cust. & Pat.App.1976).
 
 II
 
 6
 We do not review in detail the University's various claims that certain of the Director's factual findings lack support in substantial evidence because we are convinced that, at least in one cardinal respect, the administrative decision, as issued, violates the first two of the dominating standards we have reiterated in Part I, supra. UNC had specified the intent to do low resolution work with the mass spectrometer and stated the need to have mass assignment accuracy to within .01 Dalton while using the low resolution mode. The Director noted that the rival Nuclide system offers mass calculations only to .25 Dalton; he discounted this difference in the capabilities of the two systems by declaring UNC's desire for more accurate assignments to be "pointless":
 
 
 7
 We agree with Nuclide and NBS [National Bureau of Standards] that more accurate assignments in the low resolution mode are pointless, particularly in view of the availability of high resolution analysis of any given research problem (Nuclide's instrument guarantees resolving powers up to 30,000). Significantly, the applicant offered no convincing examples related to its research in which more accurate low resolution readings would not be pointless.
 
 
 8
 The Director's conclusory assessment of this matter is both inadequate under the Yale University standard calling for scientific evidence (rather than mere conclusions), and beyond the Director's province. Neither the Secretary nor his delegees have authority to render value judgments regarding the necessity of performing a particular kind of research. When an applicant states a need to perform a specific kind of research, the role of the Secretary is to determine whether the foreign apparatus has that capability and, if so, whether there is any domestically manufactured apparatus which also has that capability. As we have said (Part I, supra), the Secretary is not to decide whether that research itself is either necessary or valuable.
 
 III
 
 9
 It is not clear from the record, however, whether the VG instrument the University imported is itself capable of offering mass calculations to the nearest .01 Dalton in the low resolution mode. The record (R. I-70) merely shows that the makers of the instrument warrant it to "better than" .04 Dalton, but we are pointed to no evidence showing that it can in fact achieve .01 Dalton. Because this is one of UNC's own stated requirements, the issue of scientific equivalence cannot be determined without deciding whether the import itself meets that standard. We therefore remand this case for reconsideration by the Secretary in accord with the standards set forth in this opinion. Although we have focused only on one portion of the Secretary's decision, we do not limit the administrative reconsideration to the issue discussed above, but direct the Secretary to allow the re-opening of the entire record for submission of any new facts and arguments (including any relevant information gathered from appellant's actual operation of the VG system). There is sufficient uncertainty in the present record as to exactly what the import can do, and enough information to be gained from the actual operation of the imported instrument, to warrant that course.[4]
 
 
 10
 REMANDED.
 
 
 
 [1]
 Pub.L. No. 89-651, Sec. 6(c), 80 Stat. 897, 899. The full text of the statute is also found at Item 851.60 of the Tariff Schedules of the United States, 19 U.S.C. Sec. 1202, Schedule 8, Part 4, Headnote 6. This court has jurisdiction of an appeal "on questions of law only" under 28 U.S.C. Sec. 1295(a)(7), added by section 127 of the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 1982 U.S.CODE CONG. & AD.NEWS (96 Stat.) 38
 
 
 [2]
 The legislative history invoked by appellee (H.R.Rep. No. 1779, 89th Cong., 2d Sess. 18-19 (1966)) says no more than that the Secretary (not the institution) is to determine the factual issue of whether the domestic article meets the scientific requirements imposed by the institution for the purposes of its own research or use (i.e. whether the domestic article is of equivalent scientific value). There is no suggestion that the Secretary is also to appraise the worth of those intended purposes or to decide whether the functions the institution says it needs are in fact necessary or useful
 On the other hand, the legislative history and the regulations call for elimination, in the Secretary's consideration of scientific equivalence, of the factors of comparative cost, as well as of durability, complexity, ease of operation, ease of maintenance and versatility (unless those latter factors are necessary for accomplishing the institution's purposes). See 15 C.F.R. Sec. 301.2(n); H.R.Rep. No. 1779, 89th Cong., 2d Sess. 18-19 (1966).
 
 
 [3]
 The Secretary of Commerce has delegated his authority over these matters to the Director of the Office of Import Programs (Director). 38 Fed.Reg. 9324 (1973)
 
 
 [4]
 Appellee has argued that UNC is restricted, in this administrative proceeding, solely to the specifications and requirements contained in its RFB. That position is incorrect. The statute does not so limit an applicant, and the regulations are clear that the Secretary should consider all specifications and requirements necessary for the accomplishment of the purposes as described in the application for free entry (not simply those stated in the RFB). See 15 C.F.R. Secs. 301.2(n) + (o), 301.3(b), 301.4, 301.6(a), 301.11